```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF INDIANA
            SOUTH BEND DIVISION
```

LUIS A. BOCANEGRA,            )
                              )
Plaintiff,                    )
                              )
   vs.                        )   CAUSE NO. 3:08-CV-188
                              )
MICHAEL BROOKS, Sheriff, *et al.*, )
                              )
Defendants.                   )

## OPINION AND ORDER

This matter is before the Court on: (1) Plaintiff's Motion for Summary Judgment, filed March 5, 2009; (2) Defendant's Motion for Summary Judgment filed June 2, 2009; and (3) Motion to Include Exhibit F Disciplinary Hearing Decision for Summary Judgment, filed on July 20, 2009. For the reasons set forth below, the Court **GRANTS** the Plaintiff's Motion to Include Exhibit F (DE 53), **DENIES** the Plaintiff's Motion for Summary Judgment (DE 34), and **DENIES** the Defendant's Motion for Summary Judgment (DE 41).

BACKGROUND

Luis Bocanegra, a prisoner currently confined at the Wabash Valley Correctional Facility, filed a complaint pursuant to 42 U.S.C. section 1983 while he was confined at the Elkhart County Jail alleging that jail officials violated his federally protected rights. In its screening order, pursuant to 28 U.S.C. section 1915A, the Court granted the Plaintiff leave to proceed against Defendant Dave Kerk, a correctional corporal at the jail, in his

personal capacity for damages on his Fourteenth Amendment excessive use of force claim and dismissed Elkhart County Sheriff Michael Books pursuant to 28 U.S.C. section 1915A(b)(1).

DISCUSSION

According to the complaint, on January 9, 2008, Bocanegra complained verbally to Cpl. Kerk about having to give up a bottom bunk to another inmate. In response, Bocanegra alleges that Cpl. Kerk "activated his issued M26 taser electronic control device. I then turned around and walked towards my cell A4-K47 to pack my belongings." (DE 1 at 4). Bocanegra alleges that Cpl. Kerk ordered him to turn around and put his hands on his head, but that even though Bocanegra complied, Cpl. Kerk tased him.

"In addressing an excessive force claim brought under section 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Conner*, 490 U.S. 386, 394 (1989). Bocanegra was a pretrial detainee when the incident he complains of occurred. The Fourteenth Amendment's due process clause, rather than the Eighth Amendment's cruel and unusual punishments clause, protects pretrial detainees from excessive use of force. *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979). But "[a]n act or practice that violates the eighth amendment also violates the due process rights of pretrial detainees." *Martin v. Tyson*, 845 F.2d 1451, 1457 (7th

2

Cir. 1988).

A violation of the Eighth Amendment's cruel and unusual punishments clause consists of two elements: (1) objectively, whether the injury is sufficiently serious to deprive the prisoner of the minimal civilized measure of life's necessities, and (2) subjectively, whether the prison official's actual state of mind was one of "deliberate indifference" to the deprivation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Wilson v. Seiter*, 501 U.S. 294 (1991).

A correctional officer's use of physical force against an inmate may give rise to an Eighth Amendment claim. *Hudson v. McMillian*, 503 U.S. 1 (1992); *Whitley v. Albers*, 475 U.S. 312 (1986). In evaluating whether a correctional officer used excessive force, the court is to consider factors such as the need for the application of force, the relationship between the need and the amount of force used, and the extent of injury inflicted. *Whitley*, 475 U.S. at 321. "Whenever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley*: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.

In support of his motion for summary judgment, Bocanegra submits his affidavit, an unsworn statement signed by himself and

other inmates, medical records, grievance records, records of the disciplinary proceeding against him, and still photographs from a surveillance camera. In his affidavit, Bocanegra states that Cpl. Kerk ordered him to pack up his possessions in preparation for being moved to segregation. Bocanegra states that he asked Cpl. Kerk if he could help Bocanegra pack his belongings and:

> 4. Defendant Cpl. Dave Kerk then quickly remove[d], and activated his issued M26 Taser Electronic Control Device in my view. I then slowly turned around and place[d] my hands on my head, and as I did what I was told to do by Cpl. Dave Kerk, he then deployed his issued **M-26 Taser Gun**, and both probes struck me[,] one in between by shoulder blades and one just above my waistband, causing me to fall and injure my back.
>
> 5. **During the time these events were taking place, I did not resist Defendant Clp, (sic) Dave Kerk nor disobey his orders.**

(DE 34-1 at 3)(Emphasis in original).

In support of his motion for summary judgment, Officer Kerk provides his own affidavit, the affidavits of Nurse Maralee Hertel, Undersheriff Julie Dijkstra, Corrections Officer Jayna Chenoweth, Sgt. Mark Diamond, Corrections Officer Isaiah Boyer and Corrections Officer Mark Cuzzocrea, Medical records from the Elkhart County Jail and the Indiana Department of Correction, portions of a deposition taken of Bocanegra, and a series of photographs from a surveillance camera.

The Defendant's submissions establish that on January 9, 2008, Bocanegra was housed on Ward K47, which is a maximum security ward.

4

Bocanegra was ordered to give his bunk to Kenney Clifton, an inmate who had a medical pass for a bottom bunk. Cpl. Kerk states in his affidavit that Bocanegra approached him and other officers and "stated 'I'm not moving off the bottom bunk.' [Officer] Boyer explained to him that Kenny Clifton, the inmate who had just been moved into that cell, needed a bottom bunk due to some medical issues." (DE 42-3 ¶ 8). Bocanegra emphatically re-emphasized that he was not giving up the bottom bunk. (*Id.* ¶ 9). Cpl. Kerk told Bocanegra "he had better move to the top bunk," (*Id.* ¶ 10), and Bocanegra said that he refused to obey the order. (*Id. ¶ 11).*

Cpl. Kerk then ordered Bocanegra to pack up his belongings so he could be moved to a bottom bunk in the segregation unit for disobeying direct orders from himself and Officer Boyer. (*Id.* ¶ 12). But according to Cpl. Kerk, Bocanegra refused, stating "'Fuck you, you pack my shit up!' while turning and walking away from me." (*Id.* ¶ 13). Cpl. Kerk ordered Bocanegra to stop, but he continued to walk away." (¶ 14). Cpl. Kerk then tased Bocanegra once at a range of 15 to 20 feet. (¶ 15). Bocanegra fell to the ground and was handcuffed and taken to the medical area where a nurse removed the taser probes, during which time Bocanegra threatened the officers with retribution. (¶¶ 16-19). Cpl. Kerk states that he:

> chose to use force because Bocanegra had been defiant and verbally aggressive and I knew from prior experience that Ward K-47, which is a maximum security ward, is easily instigated by an unruly inmate. If officers allow inmates to defy their orders and speak aggressively in such a ward with other inmates gathered around, the situation

5

can become dangerous for officers and inmates. This is
especially true in Bocanegra's case, since he had become
the leader of many other inmates in his ward. This is
why, immediately after Bocanegra said "Fuck you, you pack
my shit up!" while turning and walking away from me, I
made the split-second decision to immediately restore
order and to prevent the situation from escalating.

(DE 42-3 ¶ 23).

The incident was videotaped by a security camera installed in the ward. The Plaintiff submitted still photographs from this camera, and the Defendant has submitted a series of photographs of the incident beginning at 4:02:57.460 p.m., and ending at 4:08.27.647 p.m. on January 9, 2008. He also submits a statement by Corrections Officer Jayna Chenoweth of her interpretation of the images. During the first few frames, neither Cpl. Kerk nor Bocanegra are shown, though Officer Chenoweth states that a hand sticking into some of the frames belongs to Bocanegra. Frames 636 and 640 show Bocanegra falling to the ground, and frames 644 through 680 show him lying motionless on the ground while officers approach him.

In his response to the Defendant's motion for summary judgment, Bocanegra submits another affidavit restating his claims. The Plaintiff's two affidavits and his deposition testimony consistently state that he was not disrespectful of Cpl. Kerk and did not disobey his orders.

The Defendant presents two arguments in support of his motion for summary judgment. He argues that the amount of force he used

6

against the Plaintiff does not rise to the level of a Constitutional violation and, in the alternative, he asserts that he applied a minimal amount of force in a good-faith effort to maintain or restore discipline. The Plaintiff asserts in his summary judgment motion that Cpl. Kerk used "excessive force against the plaintiff [even] when the plaintiff posed no threat to him . . . or the security of the jail or others." (DE 34 at 4).

The court will first address the Defendant's argument that the amount of force he used against the Plaintiff does not rise to the level of a Constitutional violation. He argues that the tasing "involved"' at most a *de minimis* use of force not intended to cause pain or injury to the inmate.' *Lunsford v. Bennett,* 17 F.3d 1674, 1582 (7th Cir. 1994)." (DE 44 at 10). *Lunsford* involved prison officials pouring a bucket of water on a prisoner. The United States Court of Appeals for the Seventh Circuit determined that:

> Pouring a bucket of water over the head of a prisoner who is already standing ankle-deep in water, while it may be seen as unnecessary in retrospect, is a minor use of force that does not offend the conscience. We do not advocate or condone the officers' conduct in this situation, but find that it does not rise to the level of a constitutional violation. The evidence, when viewed in the light most favorable to the plaintiff, does not support a finding of action repugnant to the conscience of mankind.

*Id.* at 1582.

The Seventh Circuit reviewed the question of whether a taser gun constituted a *de minimis* application of force in *Lewis v. Downey*, No. 08-2960, 2009 WL 2835414 (7th Cir.

7

September 4, 2009). "As one basis for his decision, the magistrate judge found that the use of the taser gun was a *de minimis* application of force. We disagree." *Id., at \*6.*

> As the Supreme Court has said, pain, not injury, is the barometer by which we measure claims of excessive force, see *id*. at 9, and one need not have personally endured a taser jolt to know the pain that must accompany it, *see Hickey v. Reeder*, 12 F.3d 754, 757 (8th Cir.1993) ("[A] stun gun inflicts a painful and frightening blow [that] temporarily paralyzes the large muscles of the body, rendering the victim helpless."); *see also Matta-Ballesteros v. Henman*, 896 F.2d 255, 256 n. 2 (7th Cir.1990) (noting that a taser "sends an electric pulse through the body of the victim causing immobilization, disorientation, loss of balance, and weakness"). Thus, we hold, as the first rung in the ladder of our analysis, that the use of a taser gun against a prisoner is more than a *de minimis* application of force.

*Id., at \*6.*

Based on the analysis of *Lewis v. Downey*, the use of a taser gun is more than a *de minimis* use of force that states a Constitutional claim upon which relief can be granted. Accordingly, the court will address the parties' arguments on whether the court can grant either party summary judgment under the standards set forth in *Whitley v. Albers* and *Hudson v. McMillian*.

The parties agree that Cpl. Kerk tased Bocanegra on January 9, 2008. They disagree, however, on the details of the incident. Cpl. Kerk states in his affidavit that Bocanegra was uncooperative and defiant, and that he used the taser on the Plaintiff in a good faith effort to maintain order. He argues that his actions did not constitute malicious or sadistic harm or the

8

wanton infliction of pain.

According to the Plaintiff's version of events, which he presents in two sworn statements and his deposition testimony, he was respectful to Cpl. Kerk, complied with Cpl. Kerk's orders, and posed no threat to the security of the jail, but Cpl. Kerk tased him anyway. The Plaintiff asserts in his motion for summary judgment that the use of the taser was an unjustified use of force.

When material facts are in dispute, then the case must proceed to trial. *Bell v. Irwin*, 321 F.3d, 637, 640 (7th Cir. 2003). The factual disagreement between the parties on the events that led up to Cpl. Kerk tasing Bocanegra constitute a dispute of material fact. If Cpl. Kerk's version of events is true, a reasonable finder of fact could conclude that his tasing of Bocanegra was a justified use of minimal force in a good-faith effort to maintain or restore order and discipline. If, on the other hand, Bocanegra's version of events is correct, a reasonable fact-finder could conclude that the tasing was unnecessary, unjustified, and was applied maliciously and sadistically to cause harm. The prints from the security videotape do not assist the court in adjudicating the disagreements between the parties because there is no audio and the events over which the parties disagree took place off camera.

Summary judgment is not the procedure to determine which facts are true: the court must accept the nonmoving party's version of events as true, and "extract all reasonable inferences from the

evidence in the light most favorable to the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Taken at face value, Cpl. Kerk's sworn statement of events precludes summary judgment in favor of Bocanegra, and Bocanegra's sworn statements of events precludes summary judgment in favor of Cpl. Kerk.

CONCLUSION

For the foregoing reasons, this court **GRANTS** the Plaintiff's Motion to Include Exhibit F (DE 53), **DENIES** the Plaintiff's Motion for Summary Judgment (DE 34), and **DENIES** the Defendant's Motion for Summary Judgment (DE 41).

**DATED: September 28, 2009**   /S/RUDY LOZANO, Judge
**United States District Court**